[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner in this action challenges the retroactive application of statutory and/or regulatory disqualifications of his eligibility for consideration and transfer to supervised home release. He claims that such retroactive applications violate his right under the ex post facto clauses of the U.S. Constitution and the due process clauses of the United States and State Constitutions. The petitioner's Third Amended Petition dated February 21, 1990 alleges the following:
On October 14, 1987, the petitioner entered pleas of guilty in the Superior Court, Judicial District of New Haven, to charges of Attempted Assault in the First Degree, Conn. Gen. Stat. Secs. 53a-49(a), 53a-59(a)(1), and Reckless Endangerment in the First Degree, Conn. Gen. Stat. Sec.53a-63. On December 4, 1987, he was sentenced to an effective sentence of sixteen years, suspended after eight years, and five years probation. He is presently in the custody of the respondent by reason of his sentences for these offenses which occurred on March 5, 1987.
Pursuant to Conn. Gen. Stat. Sec. 18-100 (e), the respondent administers programs under which inmates in the custody of the respondent may be released from correctional facilities to less restrictive forms of custody and/or supervision prior to the completion of their full sentences. One such program is known as "supervised home release", under which inmates are considered for "transfer to an approved community residence" before their sentences have been served in full.
When the offenses of which the petitioner stands convicted occurred, i.e., in February and in May of 1987, respectively, same did not disqualify an inmate so convicted from consideration for supervised home release.
On December 2, 1988 the respondent enacted administrative regulations prohibiting from consideration for supervised home release inmates who were in custody by reason of a conviction for that Section the crime of attempted assault in the first degree that carried a mandatory minimum sentence.
On July 5, 1989, Public Act 89-383, was enacted. In Sec. 13 thereof the release of inmates serving a mandatory minimum sentence was prohibited until the inmates served the mandatory minimum sentence. Also prohibited was the release on supervised home release of those inmates who had been CT Page 710 convicted of the applicable portion of the Statute for attempted assault in the first degree.
By reason of his conviction and sentence relative to the offense of attempted assault in the first degree the petitioner is presently serving a mandatory minimum sentence of five years. He applied for consideration for supervised home release between February and March 1990 and his application has been summarily rejected because he has not fully served the mandatory minimum five year term. He claims the respondent's actions are illegal and he seeks by way of relief, inter alia, that a writ of habeas corpus be issued to bring the petitioner before the court so that justice may be done.
At the outset, the Court deems that the petitioner has brought the issue before the Court by means of the appropriate vehicle. Habeas corpus is the appropriate remedy when the injury alleged is a prejudicing of one's right to be considered for release on parole. Braden v. Kentucky,410 U.S. 484, 35 L.Ed.2d 443, 93 S.Ct. 1123 (1973). See also Peyton v. Rowe, 391 U.S. 54, 20 L.Ed.2d 426,88 S.Ct. 1549 (1968) and Chatman-Bey v. Thornburgh, 864 F.2d 804, 808
N.Y. (C.A.D.C., 1988). He has filed no previous petition for habeas corpus and, as the parties have stipulated, there has been no deliberate bypass of the appeal process.
As stated by the petitioner in his Memorandum In Opposition To Motion For Summary Judgment dated January 3, 1991, "[t]he essence of petitioner's claim is that respondent's application of its rules for eligibility for supervised home release violates the ex post facto prohibition."
 The rules of law that underlie the defendant's claim under the United States constitution are well established. The prohibition of ex post facto laws forbids the enactment of "any law `which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356
(1867)." Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); see also W. LaFave A. Scott, Criminal Law (1972) Sec. 12; 2 R. Rotunda, J. Nowak J. Young, Treatise on Constitutional Law: Substance and Procedure (1986) Sec. 15.9(b); L. Tribe, American Constitutional Law (1978) Sections 10-2, 10-3. Under the applicable federal cases, "two critical elements must be CT Page 711 present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." (Emphasis in original) Weaver v. Graham, supra, 29.
State v. Rollinson, 203 Conn. 641, 646 (1987).
"Although the Latin phrase `ex post facto' literally encompasses any law passed `after the fact,' it has long been recognized by [the Supreme Court of the United States] that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them. . . As early opinions in [the United States Supreme Court] explained, `ex post facto law' was a term of art with an established meaning at the time of the framing of the Constitution. . . . Collins v. Youngblood, 497 U.S. ___110 S.Ct. ___ 111 L.Ed.2d 30, 38 (1990).
The sections of Chapter 325 of our statutes which have been called into question by the petitioner, specifically Sec. 18-100 and 18-100b as amended by Public Act 89-383 are not penal statutes. A "penal statute" is one "which defines and prescribes the punishment for a criminal offense." Ballentine's Law Dictionary, 3rd ed. (Lawyers Co-op Pub. Co., 1969).
 Strictly speaking, a penal statute is one which imposes punishment for an offense committed against the state. It is the substance and effect of the statute, rather than its form, that are to be considered in determining whether it is penal. The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual. The term is, however, frequently extended to include any act which imposes a penalty, or creates a forfeiture. A retaliatory statute has also been regarded as penal in its nature.
73 Am.Jur.2d, Statutes, Sec. 12.
89-383 was an omnibus bill containing the requirement that convicted prisoners serve any mandatory minimum portion of their sentences before being considered as eligible for supervised home release. The legislature's purpose was to bolster public confidence in the criminal justice system. This was a legitimate exercise of the legislative function. 89-383, as any other statute, is presumed to be CT Page 712 constitutional. University of Connecticut, Chapter, AAUP v. Governor, 200 Conn. 386, 397 (1986). The petitioner has not overcome that presumption.
The statutes and policies of the Department of Correction in dispute concern themselves with the conditions of and/or the place of confinement, not punishment. There is no constitutionally protected interest in the locus of the petitioner's confinement. Meachum v. Fano, 427 U.S. 223,224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); State v. Davis, 190 Conn. 327, 336-339, 461 A.2d 947 (1983) cert. denied, 464 U.S. 938, 104 S.Ct. 350. Supervised Home Release, after all, is nothing more than a program allowing convicted individuals to serve a portion of their sentences outside the walls of a jail or prison. It does not rise even to the status of probation or parole.
The petition for habeas corpus is denied.
SCHEINBLUM, JUDGE